Mitchell, J.
Plaintiff, 20 years of age, driving her brother’s Chevrolet 1935 coupe, accompanied by her younger sister, age 17, drove west from New Hampton, Iowa, about 9 :30 a. m. on primary highway No. 18, which is a paved highway 18 feet in width. Highway No. 18 is intersected by a road that runs north and south. When she arrived at the crest of a hill, about 350 feet east of the intersection, plaintiff observed defendant’s oil truck proceeding south toward the intersection at a speed of approximately 20 miles an hour.
The truck appeared to slow down as it approached the ‘ ‘ STOP ’ ’ sign located at the north entrance to the intersection and continued to slow down as he approached the paved portion of highway No. 18, which is 41 feet south of “STOP” sign. The approach to pavement was slightly upgrade from low spot about 300 feet north of intersection to about 25 feet north of the center of the intersection. The travelled portion of the approach spreads out fan shaped from the “STOP” sign to the pavement and strikes the pavement on the west just about at the west fence line. Plaintiff and defendant were both familiar with the intersection and knew the location of the ‘ ‘ STOP ’ ’ sign. When defendant’s truck arrived opposite “STOP” sign, plaintiff was approximately ten rods east of intersection. Truck did not stop at “STOP” sign but continued south and west around the curved approach but' appeared to be slowing up. When truck reached north edge of pavement, plaintiff had just entered intersection from the east. Plaintiff first realized it was not going to stop just after she entered intersection. She immediately applied her brakes, turned slightly to left (south) and held on to steering wheel. Cars collided about 20 feet west of intersection. Plaintiff observed deep ditches on both sides of highway No. 18 at place of collision and crest of hill to the west, and flume about 300 feet west. Brakes took hold but could not stop in time. Plaintiff testified that she thought and expected defendant’s truck to stop, and that she thought she could not turn further to the left at her speed without going into the ditch.
Plaintiff was injured and this action was commenced by her next friend to recover damages. There was a trial to a jury, which returned a verdict for the defendant. Plaintiff has appealed.
*332 Before we consider the errors set forth by appellant, upon which she seeks a reversal, we will consider appellee’s contention, that the alleged errors, if any, are without prejudice for the reason that appellant’s own evidence shows that she was guilty of contributory negligence as a matter of law,* and that appellee’s motion to direct, should have been sustained.
It is appellee’s contention that as appellant approached the intersection in question, she came up a steep hill, and because of the hill her view was obscured until she was between 300 to 350 feet east of the intersection. That she was driving between 40 and 45 miles per hour, and that she did not apply the brakes until she entered the intersection; that appellant violated the provisions of section 5023.04, in failing to reduce her speed, and have her car under control when approaching and transversing an intersection.
There is evidence from which the jury could have found, that for a distance of between 300 to 350 feet, appellant’s view of the intersection was unobstructed, that she saw the appellee’s truck approaching; that she knew of the ‘ ‘ STOP ’ ’ sign; that this was a paved highway; that she applied the brakes as she entered the intersection.
The only case discussed by appellee is that of Lang v. Kollasch, 218 Iowa 391, 255 N. W. 493, which was decided when section 5043 of the 1935 Code was the law of the state.
The Lang ease involved an obscured intersection, while in the ease at bar, there was a good view of the intersection for a distance of between 300 to 350 feet.
Appellant approached this intersection at a rate of speed between 40 and 45 miles an hour. It was a paved highway, while the day was cloudy visibility was good, and the pavement was dry. She knew of the STOP sign. She saw appellee’s oil truck approaching the intersection. She had a right to believe that appellee would obey the law and stop the truck before entering the intersection. As soon as she realized the appellee was entering the intersection without stopping she applied the brakes. Certainly under the record in this case, the jury could have found that she had control of her car ripon entering the intersection.
In Orth v. Gregg, 217 Iowa 516, 519, 250 N. W. 113, 115, this court said:
*333 “Plaintiff’s right to assume that defendant would obey the law is an important consideration in determining what reasonable care required him to do for his own safety. * * * What constitutes such care is usually a jury question.”
In Newland v. McClelland & Son, 217 Iowa 568, 575, 250 N. W. 229, 232, we said:
' ‘ The record presents a situation in which it could be found that the circumstances producing the collision, came into existence and produced their result in but a few seconds. What the decedent did and what he could have done for his own safety in this fleeting moment were clearly questions for the jury.”
In the case of Murphy v. Iowa Electric Co., 206 Iowa 567, 571, 220 N. W. 360, 362, speaking through Justice ICindig, this court said:
“The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury, rather than the court to detect and settle * * *. If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise even though it is known what was done by that individual in this regard, yet if his conduct is such that there may fairly be-different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question.”
Under the record in this case, the trial court was right in overruling the motion to direct and submitting the case to the jury.
The main ground for reversal relied upon by appellant in her brief and argument is that the court improperly restricted her attorneys in their examination of the jury on the voir dire on the question of insurance. The vital question, therefore is: Did the lower court exceed its discretion under the record made in this case? To properly determine this question it is necessary to briefly summarize the record made in this case before the jury was selected. The case was called for trial and there was *334 on file an application filed by the appellee stating that on the date of the accident the appellee was insured and carried a public liability policy issued by the Fidelity & Casualty Company of New York, a stock company, and that said corporation was not operated on a mutual assessment basis. The application also set out a complete list of the panel of the jury called to-serve as petit jurors upon this case and that the Fidelity & Casualty Company of New York had examined its files and records to determine whether any of the jurors named on the panel were agents, officers, stockholders or in any other manner interested in said corporation at the time of the trial and from the examination it was found that no member of the panel was so interested. This was duly sworn to by the vice-president of the Fidelity & Casualty Company of New York. The appellee asked the court to admonish the plaintiff’s attorneys, on their preliminary examination of the jury, not to interrogate any of the jurors selected as to whether they were officers, agents, stockholders or in any manner interested in any automobile liability company or the Fidelity & Casualty Company of New York. The defendant requested the court to rule upon this application and pleading prior to the time the jury was selected.
At the time the application was presented, certain statements were made by the attorneys and the court. We quote from the abstract:
“Mr. Donohue: There is also, Your Honor, the application with reference to the examination of the jury setting forth that the insurer in the case is a stock company, and also the showing that no member of the jury is a stockholder, agent — . There is also the affidavit of the vice-president of the company setting forth that there is no officer, stockholder, policy holder, agent or anyone in any way or manner interested in this insurance company on the jury, and that we are a stock company.
“Mr. Lyons: I would like to be heard on that application, Your Honor.
“The Court: Yes.
“Mr. Lyons: In the first place, it is one of the most unusual documents ever presented in court. It charges counsel with unethical practice. It is equivalent to asking the Court to enjoin the attorney from illegal and unethical practice of law.
*335 “Mr. Donohue: It is commonly used in Iowa. You haven’t been here for a number of years.
“Mr. Lyons: I still think ethics are obtainable in the courts of Iowa. I am glad I wasn’t associated in this case at the time the application was filed. It says, ‘ That the defendant* alleges that the sole purpose of the attorneys propounding the said question to the various jurors would be to inform the said jury that the defendant carried insurance in a company insuring him against public liability.’
“I have always thought the interrogation of jurors was for the purpose of determining whether or not they, or any members of their families, had any interest, or such interest in the outcome of that suit as would make them undesirable or ineligible to serve as jurors. I think eases abound where the Supreme Court has found, and trial courts have found that those inquiries are proper.
“Mr. Donohue: Not when a stock company.
“Mr. Lyons: Let me finish first. It appears now that there is another party at interest in this lawsuit which is an insurance cbmpany. That being a part of the record now, and having been filed as a part of the case, the attorney for the plaintiff; states to this Court that it is his belief, and his professional belief, that there may be people on this jury who have members of their families interested as agents for insurance companies; maybe not this one, but other insurance companies, who because of their occupation or because of their interest in insurance companies are interested in the subject matter of this action and could be influenced in their decision thereby. * *
“Mr. Lyons: I will say that unless the Court prohibits us it will be our purpose to ask the jurors whether they .or any of the immediate members of their families are interested as an employee,' agent or stockholder of any insurance company engaged in the business of writing liability insurance upon motor vehicles; second, we will further ask the jury whether they or any of the members of their immediate families are engaged as agents, stockholders or employees of the Fidelity & Casualty Company of New York; that such questions will be asked in good faith for the purpose of obtaining information *336 as to the interest of the jurors or any members of their immediate families in the outcome of this litigation.
“Mr. Donohue: I suppose the Court recalls it better than 1 do. The first couple of jurors were inquired of as to whether they were interested in a stated insurance company, and then the question arose of whether it was a mutual assessment or a stock company and the Court prohibited eliciting along that Hne and said in view of the fact it was a stock company there, was no necessity for those interrogatories.
“The Court: I will tell you, we all know there is nobody out in this country who owns any stock in this company.
‘ ‘ Mi'. Donohue: There is a record showing that.
“The Court: We know it as common knowledge. People out jn this country are not buying stock in that kind of company ; and cases ought to be tried on their merits and not on prejudice in any way, and I am going to exclude all questions in regard to insurance and admonish the counsel that they will say nothing about insurance at this time; but after the jury bring in the verdict you may then ask the jurors as to whether or not they or any of the members of their families, of their immediate families, are interested as stockholders or in any way have any financial interest in the insurance company mentioned in the pleadings in this case, and if it does develop that they are stockholders or have any financial interest in this company, why, then you will be entitled to a new trial at the expense of the defense in this ease.
“Mr. Lyons: Note an exception to the ruling; and I just want to say this; that I don’t know just what territory the Court covers by saying no one in this part of the country owns stock in these insurance companies, because I can produce evidence to this effect, that within a very narrow range there is considerable stock held in this vicinity in insurance companies.
“The Court: Not by any of these people who serve on juries.”
The Constitution of Iowa, Article I, section 9, provides that the right of trial by jury shall remain inviolate. Necessarily, this implies a jury, fair, impartial, disinterested and unbiased. To obtain such jury, the machinery must be adequate for the purpose, and any restrictions in the processes which un *337 reasonably prevent litigants or their counsel from obtaining such a jury, infringe upon this constitutional right. Under the statutes and practice in Iowa, two forms of challenges have been developed, i.e., challenges for cause and peremptory challenges (section 11466 et seq., 1939 Code of Iowa). In the former, specific statutory grounds have been enumerated. (Section 11472, 1939 Code of Iowa.) In the latter, however, our statutes, because of the impossibility of any enumeration which could encompass and envisage all of the varieties of relationships which might and do bear heavily upon the selection of jurors, merely provide “a peremptory challenge is an objection to a juror for which no reason need be given, but upon which the court shall exclude him” (section 11468, 19-39 Code of Iowa). To give practical effect to these constitutional and statutory provisions, courts generally have allowed a wide latitude in the examination of jurors, in order that those challenges may be intelligently exercised. If the questions are to be confined to those bearing upon grounds of challenge for cause, then the very purpose and necessity of peremptory challenges have been, for all practical uses, fully and completely thwarted. And when, in any given case, even an apparent interest in the subject matter of the action or in the parties, whether of record or not, is disclosed, a right accrues to a litigant to explore in good faith, by every reasonable inquiry, into the nature and extent of such interest, to the end that a jury, when selected, shall be the kind of jury contemplated in the constitution.
In the case of Raines v. Wilson, 213 Iowa 1251, 1261, 1262, 239 N. W. 36, 40, this court held there was no error in the trial court overruling defendant’s objection to the following question propounded to the jurors, to-wit:
“Are any of you or any of your immediate family stockholders in any insurance company?”
After reviewing prior cases involving the same or similar questions, the court, through Justice Wagner, concluded:
“The question which we are now considering has been passed upon by numerous courts, including our own. The overwhelming majority of the courts sustain the right of counsel for the plaintiff in a personal injury ease, so long as he acts in *338 good faith for the purpose of obtaining information upon which to exercise his peremptory challenge of the jurors, .and not for the purpose of informing the jury that an insurance company is back of the defendant of record, to interrogate prospective jurors by one form or another of questions, with respect to their interest in, or connection with insurance companies. See 56 A. L. R., pages 1456, 1457, 1458. Twenty-seven of our sister states have passed upon the question and sustained the plaintiff’s right to propound an inquiry such as was the one propounded in the instant case. See Nole in 56 A. L. R., pages 1456-1458, and cases there cited. It is clearly apparent that, if a litigant were denied the right to propound the question asked the jurors in the instant case, he might be compelled to accept a juror who is a stockholder in an insurance company, and probably the very one having defendant’s liability insured. In the instant case, plaintiff’s counsel who propounded the interrogatory was a nonresident of the county in which the ease was tried. '-'There is nothing unusual for jurors to own stock in corporations. Appellee in his written argument brings us the information that the Financial World of March 25, 1931, shows that of the families in the United States, 27.2% thereof own stock in corporations. There was nothing odious in the general question propounded. We think it was a proper question to be asked, for the purpose of informing counsel relative to his right in exercising peremptory challenges, and, as held by our prior cases herein-before cited, that there was no abuse of discretion on the part of the trial court. There is nothing in the record to show want of good faith on the part of plaintiff’s counsel; nothing to show a willful, diligent or persistent course or effort to impress upon the jury the fact that defendant’s liability was insured. * * * Both counsel and the trial court should, indeed, be very careful, upon this proposition of the examination of jurors, and counsel should propound no questions upon this subject, except for the honest purpose of eliciting proper information to aid them in exercising peremptory challenges. If they proceed further than that, then bad faith on their part will be shown, and if the trial court permits transgression in this respect, then he will be guilty of abuse of discretion. ’ ’
*339 A situation similar to the case at bar was submitted to the supreme court of Michigan in the case of Campbell v. Osterland, 283 Mich. 175, 178, 277 N. W. 875, 876, in which the Michigan court said, we quote:
“In the instant case, plaintiff was not bound to accept defendant’s statement as to which members of the panel were members of the insurance company. * * * It was an ex parte statement, and a wholly inadequate substitute for the right to examine on the voir dire. Plaintiff, thus denied necessary information, did not waive his right to claim error by not exhausting his peremptory challenges. The judge’s refusal to accord plaintiff the right to make this examination of the jury was error.”
No record shows better than this the necessity for granting to litigants an opportunity to ascertain on the voir dire whether any of the jurors are subject to being challenged for cause or even peremptorily. In the case at bar, one of the jurors was the wife of the agent who wrote the policy of insurance in the Fidelity and Casualty Company of New York, involved in this very ease, and yet the appellant’s attorneys were not permitted to inquire of her, as to her connections with an insurance company. The affidavit of the vice-president of the insurance company was made in New York. It only claimed that the books of the corporation did not show that any of the jurors had any interest in the company. Litigants should not be required to rely upon an ex parte statement of someone, even if it be an officer of an insurance company, as to what interest prospective jurors have in the insurance company that has written the policy involved in the case. While it is true whether or not there is insurance is wholly irrelevant as to the issues of the case, it can and often is relevant and material upon the question of the bias, prejudice or interest of a prospective juror.
The insurance question was injected into this case by the insurance company. There is no showing of any bad faith on the part of counsel for appellant. The lower court abused his discretion in sustaining the application of appellee.
Appellant contends that the court erred in giving instruction No. 11. With this we agree. The instruction required *340 of the driver of appellee’s truck a standard of care entirely different than that required by the statute, and specifically exonerated him from the duty to stop, and authorized the jury to completely and fully acquit him of negligence, if they found that as he approached • and came to the STOP sign, he slowed down and made observations.
Other questions are raised, all have been given consideration.
A motion to strike appellee’s additional abstract was submitted with the case, and same is hereby overruled.
This case must be and it is reversed and remanded. — Reversed and remanded.
Hale, C. J., and Sager, Stiger, Bliss, Gareield, Oliver, and Wennerstrum, JJ., concur.